UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RIVERKEEPER, INC.; CONNECTICUT FUND FOR THE ENVIRONMENT, d/b/a/ SAVE THE SOUND; NATURAL RESOURCES DEFENSE COUNCIL, INC.; WATERKEEPER ALLIANCE, INC.; RARITAN BAYKEEPER, INC., d/b/a NY/NJ BAYKEEPER; BRONX COUNCIL FOR ENVIRONMENTAL QUALITY; NEWTOWN CREEK ALLIANCE; JAMAICA BAY ECOWATCHERS; HUDSON RIVER WATERTRAIL ASSOCIATION,<br><br>Plaintiffs,<br><br>vs.<br><br>SCOTT PRUITT, Administrator of the United States Environmental Protection Agency; CATHERINE McCABE, Acting Regional Administrator, Environmental Protection Agency, Region 2; and THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>Defendants. | Civ. No:<br><br>**COMPLAINT** |

## INTRODUCTION

1.      This action is a citizen suit pursuant to Clean Water Act § 505(a)(2), 33 U.S.C. § 1365(a)(2), to enforce the non-discretionary duty of the Administrator of the Environmental Protection Agency to disapprove and replace New York State's revised water quality standards for disease causing pathogens in surface waters.

2.      In the waters surrounding New York City, pollution from sewer overflows and polluted runoff keep millions of New Yorkers from safely enjoying the water for recreation. Over fifty times a year, when New York City receives as little as one-tenth of an inch of rain, its outdated sewer systems are inundated with storm water and dump raw sewage from over 400

1

locations along the shoreline in all five boroughs. Further, in many locations in New York City, polluted runoff alone, without raw sewage, is discharged without treatment into coastal waters.

3. Raw sewage fouls places where people of all ages, ethnicities, and income levels live, fish, swim, row, kayak, or engage in other direct water contact activities. Untreated sewage and polluted runoff in the water contain bacteria and other pathogens that cause gastroenteritis, skin rashes, pinkeye, ear, nose and throat problems, respiratory infections, meningitis, and hepatitis. Consequences are worse for children, the elderly, pregnant women, and anyone with a weakened immune system. As a result, New Yorkers' use of and recreation on the waters is significantly impaired by sewage discharges.

4. Under the Clean Water Act ("the Act"), the United States Environmental Protection Agency (the "Agency") and New York State Department of Environmental Conservation ("NYSDEC") share responsibility for adopting and enforcing water quality standards sufficient to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters" and attain "water quality which provides for the protection and propagation of fish, shellfish, and wildlife and provides for recreation in and on the water." 33 U.S.C. § 1251(a), (a)(2). Such water quality standards are central to the Act's regulatory scheme. Among other things, the Act requires all water pollution discharge permits to limit pollution sufficiently to comply with water quality standards. *See* 33 U.S.C. § 1233(b)(1)(C) ("there shall be achieved . . . any more stringent limitation, including those necessary to meet water quality standards ... established pursuant to any State law or regulations . . . or required to implement any applicable water quality standard established pursuant to this chapter").

5. For certain waters in New York City and elsewhere, designated as Class I and SD waters, NYSDEC relies on outdated water quality standards for pathogens that are found in raw

2

sewage and polluted runoff. In violation of the Act, the Agency continues to allow NYSDEC to rely on those standards, despite the Agency's determination that they are not scientifically defensible and do not protect public health.

6.	Plaintiffs Riverkeeper, Inc.; Connecticut Fund for the Environment d/b/a Save the Sound; Natural Resources Defense Council, Inc.; Waterkeeper Alliance, Inc.; Raritan Baykeeper, Inc. d/b/a NY/NJ Baykeeper; Bronx Council for Environmental Quality; Jamaica Bay Ecowatchers; and Hudson River Watertrail Association (collectively, "Plaintiffs") bring this complaint against the "Agency," Scott Pruitt, in his official capacity as Administrator of the Agency, and Catherine McCabe, in her official capacity as Acting Regional Administrator of Region 2 of the Agency (defendants will collectively be referred to herein as the "Agency") seeking declaratory and injunctive relief to remedy the Agency's failure to perform its non-discretionary duties under the Act to ensure the adoption of water quality standards that protect the human health of people seeking to recreate in New York State waters.

## JURISDICTION AND VENUE

7.	This Court has subject matter jurisdiction over this matter under 33 U.S.C. § 1365(a), because plaintiffs allege a failure of the Agency and Administrator to perform a non-discretionary duty under the Act.

8.	Additionally, jurisdiction exists under 28 U.S.C. § 1331 ("Federal question"); 28 U.S.C. § 1361 ("Action to compel an officer of the United States to perform his duty"); and 28 U.S.C. §§ 2201-2202 ("Creation of remedy" and "Further relief" provisions establishing power to issue declaratory judgments in cases of actual controversy).

9.	Venue is proper in this judicial district and in this court under 28 U.S.C. § 1391(e) because no real property is involved in this action and the first named plaintiff, Riverkeeper, Inc.,

3

resides or maintains its principal place of business in Ossining, New York, which is located in the Southern District of New York.

10. On April 27, 2017, Plaintiffs served the Agency and the Office of the United States Attorney General with a Notice of Intent to Sue by certified mail. More than sixty days have passed since notice was served. Accordingly, Plaintiffs have provided Defendants with at least sixty days' written notice of the violation of law alleged herein in the form and manner required under the Act (33 U.S.C. § 1365(b)(2)). A copy of the notice is attached as Exhibit A.

## THE PARTIES

11. Plaintiff Riverkeeper, Inc., is a not-for-profit environmental organization existing under the laws of the state of New York, headquartered in Ossining, New York. Formed in 1966 as the Hudson River Fishermen's Association, Riverkeeper's mission includes safeguarding the environmental, recreational and commercial integrity of the Hudson River, its tributaries and the waters of New York City. Riverkeeper and its members share a common concern about the quality of the waters surrounding New York City.

12. Plaintiff Connecticut Fund for the Environment, Inc. d/b/a Save the Sound ("CFE/Save the Sound") was founded in 1978 to protect and improve the land, air, and water using advocacy and scientific expertise to achieve results that benefit our environment for current and future generations. CFE/Save the Sound is a not-for-profit corporation, incorporated under the laws of the State of Connecticut, with its principal place of business in New Haven, Connecticut. CFE/Save the Sound represents more than 4,700 member households in Connecticut and New York. Save the Sound was founded in 1972 as the Long Island Sound Taskforce to preserve and protect Long Island Sound. In 2004, Connecticut Fund for the Environment merged with Save the Sound CFE/Save the Sound seeks to protect, conserve and

protect the environmental health and natural resources of the Long Island Sound. CFE/Save the Sound has represented the interests of its membership in legal proceedings before trial and appellate courts and federal and state administrative agencies in various proceedings in which CFE/Save the Sound sought to protect the environment and natural resources for its members.

13. Plaintiff Natural Resources Defense Council, Inc. ("NRDC") is a not-for-profit environmental advocacy organization headquartered in New York, New York and has 346,000 members nationwide. NRDC has more than 30,000 members who live in New York State, including over 13,000 members in New York City. NRDC's mission is to safeguard the Earth – its people, its plants and animals, and the natural systems on which all life depends. NRDC, with its staff of scientists, lawyers, and environmental specialists, has long been active in protecting coastal waters in New York City and around the country, including by advocating for the enforcement of the Act and related state laws and, when necessary, bringing citizen enforcement actions on behalf of itself and its members.

14. Plaintiff Waterkeeper Alliance ("Waterkeeper") is a not-for-profit corporation organized under the laws of New York. Waterkeeper is a member supported, international environmental advocacy organization with its headquarters in New York, New York. Waterkeeper strengthens and grows a global network of grassroots leaders protecting everyone's right to clean water. Comprised of approximately 320 Waterkeeper Member Organizations and Affiliates around the world (including Plaintiffs Riverkeeper, Inc. and Raritan Baykeeper, Inc.), Waterkeeper is the largest and fastest growing non-profit focused solely on clean water. Waterkeeper's goal is drinkable, swimmable, and fishable water everywhere. Under its Clean Water Defense campaign, Waterkeeper fights attempts to weaken current environmental protections such as the Clean Water Act and promotes stronger legal safeguards for the world's

water resources. Waterkeeper holds polluters accountable and advocates for strong regulations and vigilant enforcement of environmental laws.

15. Formed in 1971, the Bronx Council for Environmental Quality ("BCEQ") is a not-for-profit corporation organized under the laws of New York and based in the Bronx, New York. BCEQ is made up entirely of volunteers and has no staff. As a mission, BCEQ seeks to establish — as an inherent human right — a sound, forward-looking environmental policy regarding an aesthetic, unpolluted, environment protecting a natural and historic heritage. For the past sixteen years, the organization has highlighted the need for clean water at its annual meetings and semi-annual mini-conference for the Bronx and New York City's waterways. BCEQ focuses on the Bronx, East, Harlem, Hudson, & Hutchinson Rivers; the Bronx Kill; Tibbetts Brook; the Long Island Sound; and Westchester Creek. From the Harlem River's pollution, including the largest combined sewer outfall in the city, to the Bronx and Hutchinson Rivers and Westchester Creek, which have unabated combined sewer outfalls, our members share concerns that pollution often makes boating, swimming, or fishing on these rivers unsafe.

16. The Newtown Creek Alliance is a not-for-profit organization organized under the laws of New York and located in Sunnyside, NY. Its members consist primarily of individuals that live or work around Newtown Creek. Newtown Creek Alliance is run by dedicated community members seeking to fulfill the organization's mission: reveal, restore and revitalize Newtown Creek. This 3.8-mile waterway, which serves as the Brooklyn/Queens border in the heart of New York City, has suffered centuries of environmental abuse and neglect resulting in its designation as a federal Superfund site. In addition to historical contamination, water quality in Newtown Creek is significantly impaired by the billions of gallons of untreated sewage and stormwater that are discharged into its stagnant tributaries each year. Poor water quality poses

significant threats to the local marine ecosystem and restricts the community's ability to safely access and utilize Newtown Creek as an asset for recreation and education. The untreated sewage, stormwater runoff and plastic debris that results from CSOs makes the Creek unsightly and odorous for shoreline visitors while posing great health risk to a growing number of recreational users (including Newtown Creek Alliance members) who use the creek as canoers, kayakers and people engaged in recreational fishing. Newtown Creek Alliance is also involved in restoration and hands-on research projects, which require close proximity or contact with surface waters. Because of CSOs, some of the Alliance's activities must be re-scheduled after rain events to lessen risk to human health.

17.     Jamaica Bay Ecowatchers ("Ecowatchers") is a not for profit corporation organized under the laws of New York and located in Broad Channel, New York. Ecowatchers' mission is to work to protect and preserve the waters and habitat of Jamaica Bay. Ecowatchers has been active and formally organized since 1995. The organization was the first to recognize the loss of wetland islands in Jamaica Bay, the first to recognize the impact that New York City's increased nitrogen loading was having on the water quality of the bay, and the leading organization to oppose the 2010 proposal of the Port Authority to expand the JFK airport runways out into the waters of the bay. It is also the lead not-for-profit on the recent Rockaway Artificial Reef replenishment project working with the Transco Williams Company. Ecowatchers is actively involved in advocating for and directly working on wetland island restoration, oyster restoration, adjacent shoreline mitigation and restoration, water quality monitoring and advocating for water quality improvements. It is primarily focused on the waters of Jamaica Bay as well as the immediately adjacent portions of the New York Bight. Its members have hundreds of years of combined time out on Jamaica Bay thru boating, fishing, kayaking, scuba diving and

had a shared common goal of protecting and preserving this unique estuary for the enjoyment of all New Yorkers as well as the many out of state and even out of country visitors. With the growing recreational activities taking place in Jamaica Bay, the organization now sees thousands of people swimming in these waters and the waters of the tributaries that feed into it. Ecowatchers is concerned that high levels of pathogens threaten the health and safety of those who swim in these waters

18. Raritan Baykeeper, d/b/a/ NY/NJ Baykeeper, ("NY/NJ Baykeeper") is a 501(c)(3) not-for-profit organized under the laws of New Jersey. Its members are local residents in communities around the New York-New Jersey Harbor Estuary and its watershed. NY/NJ Baykeeper is dedicated to protecting the health of its waterways and watershed through advocacy, legal actions, educational programs, restoration projects and outreach. Its work focuses on protecting, preserving and restoring the various fish and wildlife habitats that exist within the watersheds located in urban areas of northern New Jersey and New York City, including the waters at issue in this action. NY/NJ Baykeeper often represents the interest of underserved and front-line communities. The impact of poor water quality affects these communities the most, drastically reducing their already limited access to fishable, swimmable water. Along waters of concern to NY/NJ Baykeeper members that are subject to Class I and SD water quality standards, such as Upper New York Bay, Kill Van Kull, Arthur Kill, and tributaries of Jamaica Bay, an outdated standard unnecessarily puts families at risk when kayaking, canoeing, or engaging in any other activity that might cause them to contact the water. Ongoing pollution causes an overall fear or apprehension among members of adjacent communities in regard to their willingness to use their local waterways. Some are forced to travel well outside of

their neighborhoods to access safe, clean water; for others, the ability to travel is limited or non-existent and they are prevented from accessing any safe, clean water.

19. The New York City Water Trail Association ("NYCWTA") is an advocacy group operating under the aegis of the Hudson River Watertrail Association, a non-profit corporation organized under the laws of New York. NYCWTA aims to represent the more than twenty community boating organizations now located in and around New York City. The group's focus is the safe use of the Water Trail, created by the NYC Parks Department in 2008, the creation and improvement of resources for non- motorized small boat users; and the promotion of free access to the public waterways. For the past six years NYCWTA has coordinated a water quality monitoring program that tests weekly for sewage pollution at more than 50 sites in or near New York Harbor. The primary purpose of that program is to provide our constituency (human-powered boaters) with a predictive database so that they can make informed decisions about when and where to launch. Perhaps more than any other user group, that constituency is impacted by the city's ongoing sewage discharges under the old standards, and the consequent risk of exposure to harmful pathogens while recreating on the public waterways.

20. Each Plaintiff files this action on behalf of itself and its members in an effort to protect health, recreational, aesthetic, scientific, and conservation interests in Class I and SD waters.

21. Defendant Scott Pruitt is the Administrator of the United States Environmental Protection Agency. He is charged with the administration and enforcement of the Act, including the mandates under 33 U.S.C. § 1313(c)(2)-(4) that are at issue here.

22. Defendant Catherine McCabe is the Acting Regional Administrator of the Environmental Protection Agency, Region 2. She is charged with the administration and

enforcement of the Act in Region 2, including the mandates under 33 U.S.C. § 1313(c)(2)-(4) that are at issue here.

23. Defendant United States Environmental Protection Agency is an agency of the federal government, which has the primary statutory responsibility under the Act to protect the waters of the United States from pollution. Defendant's headquarters are in Washington, D.C.

## STANDING

24. Members of Riverkeeper, CFE/Save the Sound, NRDC, Waterkeeper Alliance, NY/NJ Baykeeper, BCEQ, Newtown Creek Alliance, Jamaica Bay Ecowatchers, and New York City Water Trail Association use and enjoy New York Class I and SD waters for a variety of purposes, including, but not limited to, swimming, boating, personal and commercial research, and recreational fishing.

25. Plaintiffs' respective members suffer or are at increased risk of suffering illnesses, including gastroenteritis, skin rashes, pinkeye, ear, nose and throat problems, respiratory infections, meningitis, and hepatitis, when they come into contact with Class I and SD waters that comply with the State's revised water quality criteria but violate the water quality criteria that the Agency has determined are necessary to protect public health. Plaintiffs and their respective members also recreate less on and near the waters, out of concern for, the pollution that continues to enter those waters under the State's outdated water quality criteria.

26. Plaintiffs' respective members who use and enjoy Class I and SD water bodies have been, are being, and – unless the relief prayed for herein is granted – will continue to be adversely affected and irreparably injured by Defendants' unlawful failure to ensure the adoption of water quality standards that protect the human health of people seeking to recreate in New York State waters.

27. New York's use of outdated standards will often indicate that water quality is suitable for contact recreation when in fact it is not. Thus, the standards will mislead the public and members of plaintiff organizations to believe that there is no significant risk of contracting waterborne diseases when in fact this risk is significant. This misinformation puts plaintiffs' members at increased risk of illness when they seek to use and enjoy Class I and SD waters.

28. The State's outdated and weak standards also result in overly permissive pollution control requirements in water pollution discharge permits and enforcement orders, because such requirements are set based on the State's water quality criteria. Absent more stringent pollution controls, which would be required under more protective water quality criteria, unsafe pathogen levels will continue to impair plaintiffs' members' use and enjoyment of Class I and SD waters.

29. Further, as organizations committed to improving and protecting water quality in New York City and elsewhere, Plaintiffs perform tasks such as water quality sampling, in order to supplement governmental monitoring that focuses on measuring compliance with the State's outdated standards. These activities are a drain on Plaintiffs' resources. These injuries are ongoing and will be redressed by a ruling for Plaintiffs in this lawsuit because improved water quality standards will lead to improved governmental monitoring for compliance with such standards.

**BACKGROUND AND FACTS**

30. The Clean Water Act was enacted in 1972 to "restore and maintain the chemical, physical, and biological integrity of the nation's waters." 33 U.S.C. § 1251(a).

31. Section 303 of the Act, 33 U.S.C. § 1313, requires States to establish water quality standards under a defined schedule. Standards must "be such as to protect the public

health or welfare, enhance the quality of water and serve the purposes of the [Act]." 33 U.S.C. § 1313(c)(2)(A).

32. States are required to submit new or revised water quality standards to the Agency for approval or disapproval. 33 U.S.C. § 1313(c)(2)(A). Water quality standards consist of both a designation of desired uses of specified water bodies and "water quality criteria" establishing maximum pollution concentrations allowable for such uses. *Id.*

33. The Agency is required to determine, within sixty days, whether state submitted revised water quality standards are consistent with the Act's requirements. 33 U.S.C. § 1313(c)(3). If such standards are inconsistent with requirements of the Act, the Agency is required to notify the State within ninety days and specify changes necessary to meet those requirements. *Id.* If the State fails to implement appropriate water quality standards within ninety days of such notification, the Agency is required to promulgate the appropriate water quality standards. *Id.*

34. In 2015, NYSDEC adopted revised water quality standards for New York State's Class I and SD waters, which primarily include waters around New York City such as the Hudson River, Bronx River, Harlem River, East River, Flushing Bay, Newtown Creek, and certain tributaries of Jamaica Bay. Many of these waters are also part of, flow into, or impact, Long Island Sound. The revised standards state that water quality in Class I and SD waters shall have water quality that is suitable for all recreational use. The revised standards rely on total and fecal coliform as fecal indicator bacteria ("FIB"), specifying certain maximum levels of such bacteria in the water that are deemed safe for recreation.

35. NYSDEC submitted such revised water quality standards to the Agency on or about February 24, 2016.

36. On May 9, 2016, the Agency notified NYSDEC by letter (the "May 2016 Letter") that the Agency approved that portion of the revised standards which states that water quality in Class I and SD waters shall be suitable for recreational uses.

37. With regard to the revised water quality criteria, the May 2016 letter explained that "when states adopt new or revised water quality standards, they must be scientifically defensible and protective of the designated uses of the waterbodies." The letter explained that the Agency "has not supported [total and fecal coliform as] fecal indicator bacteria (FIB) since 1986" and that the Agency's 2012 Recreational Water Quality Criteria [("RWQC")], which are based on use of enterococcus bacteria as the FIB, "are the scientifically defensible recreational criteria." The letter stated that the Agency, therefore, "expect[s] NYDEC to adopt the 2012 RWQC for all primary contact recreation waters in the State, including the Class I and SD waters, as soon as possible . . . as these are scientifically defensible recreational criteria. . . . [T]he State's pathogen standards must be revised as quickly as possible to be both scientifically defensible and fully protective of the primary contact recreation use."

38. Despite expressly determining that the State's use of total and fecal coliform as water quality criteria was inconsistent with the Act and scientifically indefensible, and despite instructing the State, as required by section 303(c)(3), as to the specific changes that must be made to those criteria to comply with the Act, the Agency purported not to expressly disapprove of the revised water quality criteria Rather, the Agency stated it was "not taking action" as to the revised criteria.

39. As of this filing, the State has not revised its water quality criteria as the Agency specified is necessary. As noted above, the Act requires states to act within 90 days, *see* 33 U.S.C. § 1313(c)(3), and that time lapsed in August 2016.

13

40. Despite being required to promulgate appropriate water quality standards where the State fails to do so, the Agency has not promulgated the appropriate water quality criteria based on enterococcus.

41. As a result, the State is still relying on water quality standards that are not scientifically defensible and allow for disease-causing pathogens in Class I and SD waters at levels that do not protect human health.

## FIRST CAUSE OF ACTION

### FAILURE TO PERFORM MANDATORY DUTY TO PROMULGATE WATER QUALITY STANDARDS THAT COMPLY WITH THE ACT

42. Plaintiffs hereby incorporate all preceding paragraphs of this complaint and all allegations contained within them.

43. Section 303 of the Act requires each state to submit any changes to water quality standards to the Agency and requires the Agency to review such changes. 33 U.S.C. § 1313(c).

44. Section 303(c)(3) provides that, upon such review:

> If the Administrator determines that any such revised or new standard is not consistent with the applicable requirements of this chapter, he shall not later than the ninetieth day after the date of submission of such standard notify the State and specify the changes to meet such requirements.

33 U.S.C. § 1313(c)(3).

45. As set forth above, in the May 2016 Letter, the Agency notified the State of the Agency's determination that the State's revised water quality criteria for Class I and SD waters are not consistent with the requirements of the Act and expressly specified for the State what changes are necessary to meet such requirements.

46. Section 303(c)(3) further provides: "If such changes are not adopted by the State within ninety days after the date of notification, the Administrator shall promulgate such standard pursuant to paragraph (4) of this subsection."

47. Section 303(c)(4) sets forth the process the Agency must follow to promulgate a water quality standard when the Agency is required to do so under section 303(c). Specifically, section 303(c)(4) provides that "[t]he Administrator shall promptly prepare and publish regulations setting forth a new or revised standard" and "shall promulgate [such standard] . . . not later than ninety days after he publishes such proposed standards, unless prior to promulgation, such State has adopted a revised or new water quality standard which the Administrator determined to be in accordance with [the Act]." 33 U.S.C. § 1313(c)(4).

48. As of the date of this filing, more than ninety days have passed since the Agency's May 2016 letter notifying the State of the Agency's determination and specifying the necessary changes to the State's water quality criteria, but the State has failed to propose or adopt such changes.

49. Despite this failure by the State, the Agency has failed to carry out its non-discretionary duties under section 303(c)(3)-(4) to propose and promulgate the necessary standards, and has also thereby "unlawfully withheld or unreasonably delayed" agency action, 5 U.S.C. § 706(a)(1).

50. Plaintiffs have no adequate remedy at law for this violation.

51. Each day the Agency violates its duty to protect New York State Class I and SD waters, it causes heightened public health risks by allowing continued pollution in excess of the water quality criteria that the Agency has determined to be necessary to protect human health, and by misleading the public to believe that there is no significant health risk when in fact there

15

is significant health risk. This injures Plaintiffs' members' aesthetic and recreational use of the State's waters, as detailed above.

## SECOND CAUSE OF ACTION (IN THE ALTERNATIVE)

## FAILURE TO PERFORM MANDATORY DUTY TO EXPRESSLY APPROVE OR DISAPPROVE OF NEW YORK'S REVISED WATER QUALITY STANDARDS

52. Plaintiffs hereby incorporate all preceding paragraphs of this complaint and all allegations contained within them.

53. When a state revises its water quality standards and submits them to the Agency, section 303(c)(3) of the Clean Water Act requires the Agency to either determine within 60 days that the state's revised water quality standards meet the requirements of the Act, or determine within 90 days that such standards are not consistent with the Act and so notify the state. Section 303(c)(3) does not allow the Agency to "take no action" on any revision to a state's water quality standards.

54. As stated in the First Cause of Action above, the Agency's May 16 Letter notified that State of the Agency's determination that the State's revised water quality criteria for Class I and SD waters are not consistent with the Act, and further specified the changes to such criteria that are necessary to meet the requirements of the Act.

55. Yet, in the May 2016 Letter, the Agency asserted that it was "not taking action" on the State's revised water quality criteria for Class I and SD waters.

56. If the Court should find that the Agency has not notified the State of the Agency's determination of whether the revised criteria are consistent with the requirements of the Act and specified any necessary changes to the criteria, then the Agency has failed to carry out its mandatory duty under section 303(c) to provide such notice to the state within ninety days, 33

U.S.C. § 1313(c)(3), and has "unlawfully withheld or unreasonably delayed" taking such action, 5 U.S.C. § 706(a)(1).

57. Plaintiffs have no adequate remedy at law for these violations.

58. Each day the Agency violates its duty to protect New York State Class I and SD waters, it causes heightened public health risks by allowing continued pollution in excess of the water quality criteria that the Agency has determined to be necessary to protect human health, and by misleading the public to believe that there is no significant health risk when in fact there is significant health risk. This injures Plaintiffs' members' aesthetic and recreational use of the State's waters, as detailed above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter the following relief:

### As to the First Cause of Action:

1. a declaratory judgment against Defendants that the Agency's failure to promulgate water quality criteria for New York's Class I and SD waters that the Agency determined in the May 2016 Letter are be necessary to protect public health is a violation of the Agency's non-discretionary duty under section 303(c)(3) and (4) of the Act, 33 U.S.C. § 1313(c)(3), (4), and that the Agency has unlawfully withheld and unreasonably delayed promulgating such criteria;

2. an injunction against Defendants requiring the Agency, within a reasonable time to be determined by the Court and consistent with the timelines and procedures and specified by section 303(c)(4) of the Act, to promulgate the water quality criteria that the Agency determined in the May 2016 Letter are necessary to protect public health;

3. an award of litigation costs, including reasonable attorney and expert witness fees, as authorized in section 505(d) of the Act, 33 U.S.C. § 1365(d); and

4. any other relief this Court deems necessary and just to effectuate a complete resolution of the legal disputes between Plaintiffs and Defendants.

**As to the Second Cause of Action (in the Alternative):**

1. a declaratory judgment against Defendants that the Agency's failure to notify the State of the Agency's determination of whether New York State's revised water quality criteria for Class I and SD waters are consistent with the Act and specify any necessary changes to the criteria is a violation of the Agency's non-discretionary duty mandated by section 303(c)(3) of the Act, 33 U.S.C. § 1313(c)(3), and that the Agency has unlawfully withheld and unreasonably delayed such action;

2. an injunction against Defendants requiring the Agency, within a reasonable time to be determined by the Court consistent with the timelines specified by section 303(c)(3) of the Act, to notify the State formally that the Agency has determined that the State's revised water quality criteria for Class I and SD waters are not consistent with requirements of the Act and to specify that the necessary changes to the criteria the Agency described in the May 2016 letter are the changes necessary to meet the requirements of the Act;

3. an injunction against Defendants requiring that, if the State fails to adopt within ninety days of such notification new water quality standards that include the necessary changes specified by the Agency, the Agency shall, within a reasonable time to be determined by the Court consistent with the timelines and procedures specified by section 303(c)(3) of the Act, promulgate the necessary criteria;

4. an award of litigation costs, including reasonable attorney and expert witness fees, as authorized in section 505(d) of the Act, 33 U.S.C. § 1365(d); and

5. any other relief this Court deems necessary and just to effectuate a complete resolution of the legal disputes between Plaintiffs and Defendants.

Respectfully submitted on this 29th day of June, 2017.

                                        S/ Todd D. Ommen
                                        Todd D. Ommen (TO-1340)
                                        Karl S. Coplan (KC-3877)
                                        Pace Environmental Litigation Clinic, Inc.
                                        78 North Broadway, White Plains, NY 10603
                                        tommen@law.pace.edu
                                        (914) 422-4343
                                        *Attorneys for Plaintiffs*

Of Counsel:
Lawrence M. Levine                 Daniel E. Estrin
*Natural Resources Defense Council*     *Waterkeeper Alliance, Inc.*

Roger Reynolds                    Richard Webster
*CFE/Save the Sound*              Sean Dixon
                                      *Riverkeeper, Inc.*