UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                      :

RIVERKEEPER, INC.; CONNECTICUT         :
FUND FOR THE ENVIRONMENT, d/b/a   :
SAVE THE SOUND; NATURAL               :
RESOURCES DEFENSE COUNCIL, INC.;  :         17-CV-4916 (VSB)
WATERKEEPER ALLIANCE, INC.;          :
RARITAN BAYKEEPER, INC., d/b/a NY/NJ :       **OPINION & ORDER**
BAYKEEPER; BRONX COUNCIL FOR     :
ENVIRONMENTAL QUALITY; NEWTOWN :
CREEK ALLIANCE; JAMAICA BAY        :
ECOWATCHERS; HUDSON RIVER           :
WATERTRAIL ASSOCIATION,              :
                                                      :
                         Plaintiffs,      :
                                                        :
                    - against -                  :
                                                        :

SCOTT PRUITT, Administrator of the United  :
States Environmental Protection Agency;     :
PETER D. LOPEZ, Regional Administrator,  :
Environmental Protection Agency, Region 2; :
and THE UNITED STATES                     :
ENVIRONMENTAL PROTECTION            :
AGENCY,                                               :
                                                        :
                                   Defendants.   :
                                                        :
------------------------------------------------------------X

Appearances:

TODD D. OMMEN
Pace Environmental Litigation Clinic, Inc.
White Plains, NY
*Counsel for Plaintiffs*

GEOFFREY S. BERMAN
Acting United States Attorney for
The Southern District of New York
BY: REBECCA S. TINIO
New York, NY
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

Before me is the motion of Defendants United States Environmental Protection Agency ("EPA"), Scott Pruitt, and Peter D. Lopez[1] (collectively, "Defendants") for a stay of proceedings until April 16, 2018. (Doc. 39.) Because I find that the various factors concerning whether a stay should be granted decidedly favor denying a stay, Defendants' motion is DENIED.

## I.   Background and Procedural History

Plaintiffs Riverkeeper, Inc., Connecticut Fund for the Environment, Natural Resources Defense Council, Inc., Waterkeeper Alliance, Inc., Raritan Baykeeper, Inc., Bronx Council for Environmental Quality, Newtown Creek Alliance, Jamaica Bay Ecowatchers, and Hudson River Watertrail Association (collectively, "Plaintiffs")—a group of non-profit organizations engaged in environmental advocacy on behalf of communities in and around New York—bring this citizen action pursuant to the Clean Water Act (the "CWA") and the Administrative Procedure Act (the "APA") requesting an injunction to compel Defendants to comply with their allegedly non-discretionary duties under the CWA. (Compl. ¶¶ 42–58.)[2]

Section 303 of the CWA requires a state to submit new or revised water quality standards to EPA for review. 33 U.S.C. § 1313(c)(2)(A). When a state submits a new or revised standard, EPA approves the standard within sixty days or disapproves the standard and specifies the changes required to meet the requirements of the CWA within ninety days. *Id.* § 1313(c)(3). "If such changes are not adopted by the State within ninety days after the date of notification, the [EPA] Administrator shall promulgate such standard pursuant to paragraph (4) of this subsection." *Id.*

---

[1] Peter D. Lopez is automatically substituted as a defendant for Catherine McCabe pursuant to Fed. R. Civ. P. 25(d).

[2] "Compl." refers to the Complaint, filed by Plaintiffs on June 29, 2017. (Doc. 1.)

On November 4, 2015, the New York State Department of Environmental Conservation ("NYSDEC") adopted water quality standards (the "2015 NY Standards") for its Class I and SD waters, (Ommen Decl. Ex. A, at 1),[3] which are generally defined as "saline surface waters" and are used for a variety of purposes, including swimming, boating, and recreational fishing, (*id.* at 2). NYSDEC submitted these revisions to EPA on February 24, 2016. (*Id.* at 1.) On May 9, 2016, EPA responded with a letter notifying NYSDEC that it was "not taking action" on the relevant revisions, but indicating that it "has not supported" a component of the revised standard since 1986 and that it "continue[s] to expect NYSDEC to adopt the 2012 Recreational Water Quality Criteria (RWQC) for all primary contact recreation waters in the State, including Class I and SD waters, as soon as possible." (*Id.* at 2–3.) To date, NYSDEC has not adopted the 2012 RWQC, nor has EPA promulgated a new standard on behalf of New York State.

Plaintiffs filed their Complaint on June 29, 2017, alleging that Defendants have failed to comply with the mandatory requirements of the CWA because they have not promulgated a standard on behalf of New York State that reflects the standards required by the CWA, or in the alternative, because they have not approved or disapproved the 2015 NY Standards. (Compl. ¶¶ 42–58.) On November 30, 2017 Defendants filed a motion to stay the litigation. (Docs. 39–41.) Plaintiffs opposed the motion on December 8, 2017, (Docs. 51–52), and Defendants filed their reply on December 15, 2017, (Doc. 55).

In their papers, Defendants state that EPA is currently assisting NYSDEC to develop updated water quality standards that adopt the 2012 RWQC and address Plaintiffs' concerns (the "Updated NY Standards"). (Defs.' Mem. 3.)[4] NYSDEC intends to submit the Updated NY

---

[3] "Ommen Decl." refers to the Declaration of Todd D. Ommen in Opposition to Defendants' Motion to Stay Litigation, filed on December 8, 2017. (Doc. 52.)

[4] "Defs.' Mem." refers to the Memorandum of Law in Support of Motion to Stay, filed by Defendants on November

3

Standards to the New York Department of State ("NYDOS") for public notice and comment by the end of March 2018. (Defs.' Mem. 3; Gratz Decl. ¶¶ 4–5, Ex. A.)[5] If, after the state rulemaking process is completed, New York State adopts the Updated NY Standards, they would be submitted to the EPA for review under Section 303 of the CWA. (Defs.' Mem. 3; Gratz Decl. ¶ 13.) Defendants claim that litigating this matter would divert considerable resources at EPA that are currently being used to provide technical assistance to develop the Updated NY Standards. (Defs.' Mem. 6; Gratz Decl. ¶ 15.) The state rulemaking process, in Defendants' view, is a more efficient route towards achieving Plaintiffs' ultimate goal, which is adoption of water quality standards in compliance with the 2012 RWQC. (Defs.' Mem. 6.) Plaintiffs disagree, asserting that the state rulemaking process is long and far from certain in achieving their desired result, which is EPA's compliance with the requirements of the CWA. (Pls.' Opp. 5–8.)[6]

## II. Legal Standard

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Therefore, whether or not to stay a proceeding is "firmly within a district court's discretion." *LaSala v. Needham & Co.*, 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005) (quoting *Am. Shipping Line, Inc. v. Massan Shipping Indus., Inc.*, 885 F. Supp. 499, 502 (S.D.N.Y. 1995)). District courts in this Circuit consider five factors in determining whether to issue a stay:

(1) the private interests of the plaintiffs in proceeding expeditiously with the civil

---

30, 2017. (Doc. 40.)

[5] "Gratz Decl." refers to the Declaration of Jeffrey Gratz, filed by Defendants on November 30, 2017. (Doc. 41.)

[6] "Pls.' Opp." refers to the Memorandum of Law in Opposition to Defendants' Motion to Stay Litigation, filed by Plaintiffs on December 8, 2017. (Doc. 51.)

4

> litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. U.S. E.P.A.*, 630 F. Supp. 2d 295, 304 (S.D.N.Y. 2009) (citation omitted). The "basic goal" in considering these factors "is to avoid prejudice." *Id.* (quoting *LaSala*, 399 F. Supp. 2d at 427).

The party seeking a stay bears the burden of establishing the basis for a stay. *LaSala*, 399 F. Supp. 2d at 427 (citing *Clinton v. Jones*, 520 U.S. 681, 708 (1997)). "In particular, if there is even a fair possibility that the stay for which he prays will work damage to some one [sic] else, the movant must make out a clear case of hardship or inequity in being required to go forward." *Id.* (internal quotation marks omitted).

## III. Discussion

Considering the facts and arguments presented by the parties, I find all but one factor in the analysis of whether or not a stay is appropriate weighs against Defendants.

The first factor—the private interests of Plaintiffs balanced against the prejudice to Plaintiffs if a stay is imposed—weighs in favor of Plaintiffs. The parties agree that Plaintiffs have an interest in the promulgation of updated water quality standards applicable to Class I and Class SD waters in New York. (Defs.' Mem. 5; Pls.' Opp. 10.) The dispute revolves around which path—the state rulemaking process or litigation—will achieve that outcome more quickly, and—as Plaintiffs argue—consistently with the statutory duties imposed on EPA. Defendants contend that the state rulemaking process will hasten the ultimate outcome desired by Plaintiffs. They point to the State's ongoing work to develop the Updated NY Standards, with EPA's technical assistance, and to the State's goal of submitting a notice of proposed rulemaking to the NYDOS by the end of March 2018. (Defs.' Mem. 5–6; Gratz Dec. ¶ 12.) Plaintiffs respond that

5

state rulemaking is a long, multi-step process that requires action by multiple stakeholders over an indefinite period of time, and fails to address the central issue of their lawsuit—whether the Defendants have failed to comply with the mandatory requirements of the CWA. (Pls.' Opp. 7–8, 10.)

Defendants have failed to establish that a stay will not prejudice, let alone serve, Plaintiffs' interest in achieving updated water quality standards as quickly as possible consistent with the duties imposed on EPA by the CWA. Accepting the representation that NYSDEC will submit the Updated NY Standards to NYDOS by the end of March 2018,[7] multiple steps must follow before the updates actually take effect. First, the Updated NY Standards will have to be published in the state register for comment.[8] Once publication occurs, there is a comment period for a minimum of sixty days. N.Y. A.P.A. § 202(1) (McKinney). If a public hearing is required, the minimum comment period will be longer. *Id.* After considering public comments, NYSDEC may need to make substantial revisions to the Updated NY Standards, requiring another notice and comment period. *See id.* § 202(4-a). If the revised rule is then adopted, NYSDEC will have to submit it to EPA for approval or disapproval pursuant to the CWA. Only once EPA approves the rule will it go into effect. The entire process could take over a year, (*see* Pls.' Opp. 8), and it involves a series of uncertain events that could extend the process further if the appropriate actions do not take place.

Defendants concede that the Updated NY Standards would have to go through this

---

[7] In their letters of November 7, 2017, (Doc. 33), and November 13, 2017, (Doc. 35), Defendants represented that the State intended to submit the Updated NY Standards for notice and comment in February 2018. The fact that NYSDEC's time estimate was pushed back in the span of less than a month between Defendants' November 13, 2017 letter and their November 30, 2017 memorandum of law weighs against a stay, and highlights the speculative nature of Defendants' time estimates/predictions.

[8] Defendants assert that submission to NYDOS will be followed by publication "shortly thereafter," but they provide no time estimate for how long that may take. (Defs.' Mem. 7–8.)

process before going into effect, but they argue that litigation could take even longer because even if Plaintiffs prevail on their claims, subsequent administrative steps would still need to take place before new water quality standards could take effect. (Defs.' Reply 4–5.)[9] These administrative steps, however, are likely to take less time than the state rulemaking process, would be consistent with the duties imposed on EPA by the CWA, and are largely within the control of EPA. For example, if Plaintiffs prevail on their claim for an injunction requiring EPA to promulgate new water quality standards, the CWA requires EPA to "*promptly* prepare and publish proposed regulations" and gives EPA ninety days after publication to promulgate the regulations. 33 U.S.C. § 1313(c)(4) (emphasis added). If Plaintiffs prevail on their alternative claim for an injunction requiring EPA to approve or disapprove the 2015 NY Standards, then the State has ninety days to adopt the changes EPA deems necessary. *See id.* § 1313(c)(3). If it does not, the process required under § 1313(c)(4) commences. *Id.* Defendants cannot use the possibility of their own delay to argue that Plaintiffs will be more prejudiced by the relief Plaintiffs request than by a stay.

Furthermore, while Defendants are correct in identifying Plaintiffs' interest in the ultimate outcome of achieving water quality standards compliant with the standards set forth in the CWA, they ignore Plaintiffs' right as litigants to have me decide expeditiously the legal issues raised by their Complaint—whether Defendants' actions have complied with the procedures set forth in the CWA to achieve the appropriate water quality standard. The CWA was enacted to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." *Id.* § 1251(a). Congress created certain procedures to secure that outcome,

---

[9] "Defs.' Reply" refers to the Reply Memorandum of Law in Further Support of Motion to Stay, filed by Defendants on December 15, 2017. (Doc. 55.)

7

including those outlined in § 1313(c). As Defendants acknowledge, Plaintiffs' "claims in this action are essentially procedural." (Defs.' Mem. 7 n.6.) In other words, their claims seek to protect their interest in the enforcement of the procedures set forth in the CWA. A stay would necessarily prejudice that interest by postponing the expeditious resolution of the question of whether Defendants have complied with their procedural obligations under the CWA. "Courts are generally reluctant to stay proceedings because they are concerned with vindicating the *plaintiff's* right to proceed with its case." *LaSala*, 399 F. Supp. 2d at 428. The first factor, therefore, weighs in favor of Plaintiffs.

The second factor—the private interests of the Defendants and the burdens litigation would impose—also weighs in favor of Plaintiffs. Defendants assert that litigating this case would divert considerable resources away from providing technical assistance to the State in the State's effort to create revised standards, thereby slowing down the rulemaking process. (Defs.' Mem. 6–7; Gratz Decl. ¶ 15.) They also argue that the litigation will disrupt the cooperative rulemaking process and likely result in the intervention of interested third parties, such as the State. (Defs.' Mem. 7.) These arguments are not compelling for several reasons.

Defendants appear to assert that they have an interest in a swift, cooperative state rulemaking process to achieve the adoption of updated water quality standards. (*Id.* at 6–7.) While it is true that EPA's legal team, in order to litigate this case, may need to consult with technical staff who is assisting the State, this does not preclude EPA from continuing to provide assistance to the State. EPA has failed to provide any details as to why litigating this case would cause a diversion of resources that would so substantially delay the rulemaking process as to justify a stay.[10] Furthermore, Defendants do not identify any divergent interests between

---

[10] In its opening memorandum, Defendants discuss at length the need to evaluate whether water quality standards

8

Defendants and the State or other potential intervenors in this litigation such that this litigation would "disrupt and damage the ongoing cooperative rulemaking process." (*Id.*) Because Defendants have failed to make "a clear case of hardship or inequity in being required to go forward," *LaSala*, 399 F. Supp. 2d at 427, the second factor weighs in favor of Plaintiffs.

The third factor—the interests of the courts—similarly weighs in Plaintiffs' favor. Defendants argue that proceeding with litigation would waste judicial resources because once the State adopts the Updated NY Standards and submits them to EPA, Plaintiffs' claims will likely be moot. (Defs.' Mem. 7–8.) As discussed above, and unlike the cases cited by Defendants, several uncertain steps must occur over a lengthy period of time before Plaintiffs' claims may become moot. The third factor, therefore, weighs in favor of Plaintiffs.

The fourth factor—the interests of non-parties—weighs slightly in favor of Defendants. While Defendants have only submitted an unsworn letter from NYSDEC asserting that "Riverkeeper's action has no basis" and describing the State's efforts in proceeding with the rulemaking process, (Gratz Decl. Ex. A), it is logical that the State's interest is in continuing the rulemaking process without the possibility that Plaintiffs' claims succeed.

The fifth factor—the public interest—weighs slightly in favor of Plaintiffs. Like Plaintiffs, the public's interest is in the swift adoption of updated water quality standards in line with the duties imposed on EPA and the requirements of the CWA.

---

variances may be appropriate for certain dischargers. (Defs.' Mem. 4.) These evaluations are being conducted "in part with the assistance of technical contractors." (*Id.*) Defendants do not assert that EPA is assisting or will assist in conducting these evaluations. Therefore, the need for these evaluations does not provide a basis for finding prejudice to Defendants' interest.

## IV. **Conclusion**

For the foregoing reasons, Defendants' motion to stay is DENIED.

SO ORDERED.

Dated: February 20, 2018
     New York, New York

*Vernon S. Broderick*
United States District Judge