UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
RIVERKEEPER, INC.; CONNECTICUT                              :
FUND FOR THE ENVIRONMENT, d/b/a                             :
SAVE THE SOUND; NATURAL                                     :
RESOURCES DEFENSE COUNCIL, INC.;                            :
WATERKEEPER ALLIANCE, INC.;                                 :
RARITAN BAYKEEPER, INC., d/b/a NY/NJ                        :
BAYKEEPER; BRONX COUNCIL FOR                                :
ENVIRONMENTAL QUALITY; NEWTOWN                              :
CREEK ALLIANCE; JAMAICA BAY                                 :     17-CV-4916 (VSB)
ECOWATCHERS; HUDSON RIVER                                   :
WATERTRAIL ASSOCIATION,                                     :     **OPINION & ORDER**
                                                            :
                                    Plaintiffs,             :
                                                            :
                  - against -                               :
                                                            :
                                                            :
ANDREW WHEELER, Administrator of the                        :
United States Environmental Protection                      :
Agency; PETER D. LOPEZ, Regional                            :
Administrator, Environmental Protection                     :
Agency, Region 2; and THE UNITED STATES                     :
ENVIRONMENTAL PROTECTION                                    :
AGENCY,                                                     :
                                                            :
                                    Defendants,             :
                                                            :
                                                            :
CITY OF NEW YORK,                                           :
                                                            :
                        Intervenor Defendant,               :
                                                            :
                                                            :
NEW YORK STATE DEPARTMENT OF                                :
ENVIRONMENTAL CONSERVATION,                                 :
                                                            :
                        Intervenor Defendant.               :
                                                            :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/15/2019

Appearances:

TODD D. OMMEN
Pace Environmental Litigation Clinic, Inc.
White Plains, NY
*Counsel for Plaintiffs*

REBECCA S. TINIO
Assistant United States Attorney
New York, NY
*Counsel for Defendants*

WILLIAM PLACHE
Assistant Corporation Counsel
New York, NY
*Counsel for Intervenor Defendant City of New York*

ANDREW G. FRANK
Assistant Attorney General
New York, NY
*Counsel for Intervenor Defendant New York State Department of Environmental Conservation*

VERNON S. BRODERICK, United States District Judge:

Plaintiffs Riverkeeper, Inc., Connecticut Fund for the Environment, Natural Resources Defense Council, Inc., Waterkeeper Alliance, Inc., Raritan Baykeeper, Inc., Bronx Council for Environmental Quality, Newtown Creek Alliance, Jamaica Bay Ecowatchers, and Hudson River Watertrail Association (collectively, "Plaintiffs")—a group of non-profit organizations engaged in environmental advocacy on behalf of communities in and around New York—bring this citizen action pursuant to the Clean Water Act (the "CWA") and the Administrative Procedure Act (the "APA"). (Compl. ¶¶ 42–58().[1] Plaintiffs seek an injunction to compel the EPA to perform an allegedly non-discretionary duty under the CWA. (*Id.* at 17.)

Before me is Plaintiffs' motion for judgment on the pleadings as to the first—and only

---

[1] "Compl." refers to the Complaint, filed by Plaintiffs on June 29, 2017. (Doc. 1.)

remaining—cause of action.² (Doc. 76.) Also before me are various cross-motions to dismiss and for judgment on the pleadings from Defendants United States Environmental Protection Agency, Andrew Wheeler,³ and Peter D. Lopez (collectively, the "EPA"), (Doc. 87), Intervenor Defendant the City of New York (the "City"), (Doc. 91), and Intervenor Defendant the New York State Department of Environmental Conservation ("NYSDEC"), (Doc. 89).⁴ Because I find that there is no subject matter jurisdiction under the CWA, Defendants' motions to dismiss the first cause of action are GRANTED, and all other motions are DENIED as moot.

## I. Background and the Clean Water Act

Section 303 of the Clean Water Act requires states to submit new or revised water quality standards to the EPA for review. 33 U.S.C. § 1313(c)(2)(A). States must designate the uses of navigable waters, and they must establish water quality criteria sufficient to protect those designated uses. *Id.*; 40 C.F.R. § 131.6(a). States must also periodically review and, as necessary, revise their water standards. 33 U.S.C. § 1313(c)(1). When a state submits a revised standard, the EPA must either approve the standard within sixty days or disapprove the standard and specify the changes to it that are necessary to meet the requirements of the CWA within ninety days. *Id.* § 1313(c)(3) ("Subparagraph (3)"). After receiving a disapproval under Subparagraph (3), the state has ninety days to adopt the changes identified by the EPA. *Id.* If the state does not adopt the changes within ninety days, the EPA must "promulgate such standard pursuant to [Sub]paragraph (4),"⁵ which requires the EPA to "promptly prepare and publish

---

² Plaintiffs' second cause of action was voluntarily dismissed pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii) on May 22, 2018. (Doc. 99.)

³ Andrew Wheeler is automatically substituted as a defendant for Scott Pruitt pursuant to Fed. R. Civ. P. 25(d).

⁴ Defendant EPA, Intervenor Defendant City of New York, and Intervenor Defendant NYSDEC are collectively referred to as "Defendants."

⁵ "Subparagraph 4" refers to 33 U.S.C. § 1313(c)(4).

proposed regulations setting forth a revised or new water quality standard for the navigable waters involved." *Id.* § 1313(c)(3)-(4). Once the EPA publishes proposed standards, it must promulgate them within ninety days, unless the state adopts a CWA-compliant standard prior to promulgation. *Id.*

On November 4, 2015, NYSDEC adopted revised standards for its Class I and SD waters, which are generally defined as "saline surface waters" and are used for a variety of purposes, including swimming, boating, and recreational fishing. (Coplan Decl. Ex. A, at 1–2).[6] NYSDEC submitted these revisions to the EPA on February 24, 2016. (*Id.* at 1.) The revisions fell into two categories. First, NYSDEC proposed revising the designated uses for both Class I and Class SD saline surface waters. (*Id.* at 2.) Under the revisions, Class I waters would additionally be suitable for "primary contact recreation" and Class SD waters would additionally be suitable for "primary and secondary contact recreation." (*Id.*) Both designated-use revisions were qualified by the language, "although other factors may limit the use for these purposes." (*Id.*) Second, NYSDEC proposed certain revisions to the "total coliform standard" and the "fecal coliform standard" for Class I and Class SD waters (collectively, the "Water Quality Standards"). (*Id.*)

On May 9, 2016, the EPA responded with a letter ("2016 Letter") notifying NYSDEC that it was approving the designate-use revisions and "not taking action" on the Water Quality Standards. (*Id.* at 2.) Regarding the Water Quality Standards, the EPA indicated that it had "not supported" a component of the proposed standard since 1986,[7] and that it "continue[d] to expect

---

[6] "Coplan Decl." refers to the Declaration of Karl S. Coplan in Support of Plaintiffs' Motion for Judgment on the Pleadings, filed on March 16, 2018. (Doc. 78.)

[7] Specifically, the EPA stated that it "is not taking action on the above total and fecal coliform standards because the agency has not supported these fecal indicator bacteria (FIB) since 1986 . . . ." (Coplan Decl. Ex. A, at 2.)

4

NYSDEC to adopt the 2012 Recreational Water Quality Criteria (RWQC) for all primary contact recreation waters in the State, including Class I and SD waters, as soon as possible."[8] (*Id.* at 2–3.) The letter stated that New York's "pathogen standards must be revised as quickly as possible to be both scientifically defensible and fully protective of the primary contact recreation use." (*Id.* at 4.) At the time of filing the complaint, NYSDEC had not adopted the 2012 RWQC, nor had the EPA promulgated a new standard on behalf of New York State.

## II. **Procedural History**

Plaintiffs filed their Complaint on June 29, 2017, alleging that the EPA had failed to comply with the mandatory requirements of the CWA. (Compl. ¶¶ 42–58.) On November 30, 2017, the EPA filed a motion to stay the litigation. (Docs. 39–41.) Plaintiffs opposed the motion on December 8, 2017, (Docs. 51–52), and the EPA filed its reply on December 15, 2017, (Doc. 55). On February 20, 2018, I denied the motion to stay. (Doc. 60.) The following day, the City and NYSDEC moved to intervene in the case as Defendants. (Docs. 66, 72.) On April 2, 2018, I granted the motions to intervene. (Doc. 83.)

On March 16, 2018, Plaintiffs filed a motion for judgment on the pleadings as to their first cause of action, pursuant to Federal Rule of Civil Procedure 12(c). (Doc. 76.) On April 16, 2018, the EPA filed: (i) its opposition to Plaintiffs' motion; (ii) a cross-motion for judgment on the pleadings, pursuant to Rule 12(c); (iii) a cross-motion to dismiss the first cause of action for

---

[8] On March 7, 2018, the EPA sent a letter to NYSDEC, explicitly "disapproving the NYSDEC's revised criteria for Class I and Class SD saline surface waters." (Doc. 78-2.) That letter did not exist when the complaint was filed, and it is not referenced in any of Defendants' answers. (*See* Docs. 1, 57, 84, 86.) Therefore, its inclusion in the Defendants' motion for judgment on the pleadings would compel me to convert their motions to motions for summary judgment. Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment . . . ."). Because I dismiss Plaintiffs' first cause of action for lack of subject matter jurisdiction, and the parties voluntarily dismissed Plaintiffs' second cause of action, I do not reach and have not considered whether to include or exclude the May 7, 2018 letter from consideration, and I do not need to determine whether to treat Defendants' motions as filed under Rule 12(c) or Rule 56.

5

lack of subject matter jurisdiction, pursuant to Rule 12(b)(1); and (iv) a cross-motion to dismiss the second cause of action for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), on the basis of mootness. (Docs. 87–88.) On the same day, the City filed: (i) its opposition to Plaintiffs' motion; (ii) a cross-motion for judgment on the pleadings pursuant to Rule 12(c); and (iii) a cross-motion for judgment on the pleadings pursuant to Rule 12(b)(1),[9] on the basis of mootness. (Docs. 91–92.) On the same day, NYSDEC filed: (i) its opposition to Plaintiffs' motion; (ii) a cross-motion to dismiss the first cause of action for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1); (iii) a cross-motion to dismiss the first cause of action for failure to state a claim, pursuant to Rule 12(b)(6)[10]; and (iv) a cross-motion to dismiss the second cause of action for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), on the basis of mootness. (Docs. 89–90.) On May 10, 2018, Plaintiffs filed their reply in support of their own motion and their opposition to the cross-motions. (Doc. 95.) On May 21, 2018, the EPA, the City, and NYSDEC separately filed their replies in support of their cross-motions. (Docs. 96–98.)

On May 22, 2018, after fully briefing their motions, all parties filed a joint stipulation of dismissal of the second cause of action, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). (Doc. 99.) Accordingly, Defendants' motions to dismiss Plaintiffs' second cause of action are DENIED as moot.

---

[9] Because the City filed this cross-motion pursuant to Rule 12(b)(1), I will treat it as a cross-motion to dismiss. The City incorporates by reference the EPA's jurisdictional arguments related to 33 U.S.C. § 1365. (Doc. 92 at 12, n.3.)

[10] NYSDEC filed its cross-motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Because NYSDEC had already filed its answer to Plaintiffs' complaint, it should have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* Fed. R. Civ. P. 12(b), (c), (h)(2)(B). Accordingly, I will treat NYSDEC's motion to dismiss for failure to state a claim as a cross-motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c). *Id.*

## III. Legal Standards

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In deciding a motion for judgment on the pleadings, a district court must "employ the same standard applicable to Rule 12(b)(6) motions to dismiss." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78 (2d Cir. 2015). This means "[a]ccepting the non-moving party's allegations as true and viewing the facts in the light most favorable to that party," and granting judgment on the pleadings "if the moving party is entitled to judgment as a matter of law." *Richards v. Select Ins. Co.*, 40 F. Supp. 2d 163, 165 (S.D.N.Y. 1999) (internal quotation marks omitted).

Under Rule 12(c), a party is entitled to judgment on the pleadings "only if it has established that no material issue of fact remains to be resolved." *Juster Assocs. v. City of Rutland, Vt.*, 901 F.2d 266, 269 (2d Cir. 1990) (internal quotation marks omitted); *see Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988) (noting that judgment on the pleadings "is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings"); 5C Charles Alan Wright et al., Fed. Prac. & Proc. § 1368, at 251 (3d ed. 2004) (noting that "plaintiff may not secure a judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery"). "On a [Rule] 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)). "A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the

7

complaint." *Id*. (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)).

A claim may be "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In deciding a Rule 12(b)(1) motion to dismiss, "the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). However, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted). Furthermore, "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings." *Id.*

## IV. Discussion

Plaintiffs' first cause of action alleges that: (i) the 2016 Letter notified NYSDEC that the revised Water Quality Standards were not consistent with the CWA; (ii) after the notification, NYSDEC was obligated to update the Water Quality Standards within ninety days to address the deficiencies identified in the letter; (iii) because NYSDEC did not update the Water Quality Standards within ninety days, the EPA had a duty to prepare and publish proposed regulations for the Class I and Class SD waters; and (iv) the EPA has failed to take that action. Plaintiff seeks an injunction requiring the EPA to promulgate those regulations. (Compl. at 17.) Defendants raise several arguments in their opposition to Plaintiffs' motion for judgment on the pleadings, cross-motions to dismiss, and cross-motions for judgment on the pleadings, including that: (i) the 2016 Letter explicitly did not take any action, and so did not trigger NYSDEC's

8

alleged duty to adopt any changes to the Water Quality Standards or EPA's alleged subsequent duty to prepare and publish proposed regulations for the Class I and Class SD waters; and (ii) in the alternative, the CWA only authorizes citizens to bring law suits to enforce non-discretionary duties, and the duty at issue is discretionary.

Because "a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)[,]" *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007), I must consider Defendants' alternative argument first. "Without jurisdiction the court cannot proceed at all in any cause; it may not assume jurisdiction for the purpose of deciding the merits of the case." *Id.* at 431 (internal quotation marks omitted).

Under the citizen-suit provision of the CWA, "any citizen may commence a civil action . . . against the [EPA] where there is an alleged failure of the [EPA] to perform any act or duty under this chapter which is not discretionary with the [EPA]." 33 U.S.C. § 1365(a)(2). Therefore, I have subject-matter jurisdiction over Plaintiffs' citizen-suit claim only if Plaintiffs can demonstrate that the EPA failed to perform a non-discretionary, or mandatory duty. Plaintiffs identify Subparagraphs (3) and (4) of 33 U.S.C. § 1313(c) as setting forth such a nondiscretionary duty.

Specifically, as discussed above, the 2016 Letter informed the NYSDEC that the Water Quality Standards were inconsistent with the requirements of the CWA. According to Plaintiffs, the NYSDEC was obligated under § 1313(c)(3) to make the changes described in the letter by August 7, 2016 (i.e., adopt the 2012 RWQC or other scientifically defensible water quality standards). There is no evidence in the record that NYSDEC adopted the 2012 RWQC or any other standards that the EPA has found to be scientifically defensible. Therefore, Plaintiffs

9

allege that, since August 7, 2016, the EPA has been under a non-discretionary duty to "promptly prepare and publish proposed regulations setting forth a revised or new water quality standard for the navigable waters involved." (*See* Compl. ¶¶ 39–40; *see also* 33 U.S.C. § 1313(c)(3).) Defendants respond that, even if the EPA is under such a duty, that duty is discretionary. Specifically, Defendants argue that I should follow the "date-certain" rule of interpretation, under which a mandatory duty exists only if a statute imposes a bright-line deadline for specified action.

When interpreting a statute, the starting point is to "begin with the text . . . to determine whether its language is clear or ambiguous." *Daniel v. Am. Bd. of Emergency Med.,* 428 F.3d 408, 423 (2d Cir. 2005) (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* (internal quotation marks omitted). The Supreme Court has explained that Congress can choose no stronger word than "shall" to express its intent that a duty be mandatory. *See United States v. Monsanto*, 491 U.S. 600, 607 (1989); *see also Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 739 n.15 (1981) (noting that Congress's use of the term "shall" constituted "mandatory language"). The CWA provides that if the EPA disapproves standards and a state fails to take action to update its standards within ninety days, the EPA "shall promptly prepare and publish proposed regulations setting forth a revised or new water quality standard for the navigable waters involved." 33 U.S.C. § 1313(c)(3)–(4). However, although probative of the meaning that should be given this provision of the CWA, the interpretative analysis does not end here.

Defendants urge me to follow the "date-certain" rule of interpretation, under which a

10

mandatory duty exists only if a statute imposes a bright-line deadline for a specified action. This rule was first announced and applied by the District of Columbia Circuit Court, in the context of interpreting the Clean Air Act. *See Sierra Club v. Thomas*, 828 F.2d 783 (D.C. Cir. 1987). The court held that "[i]n order to impose a clear-cut nondiscretionary duty . . . a duty of timeliness must categorically mandate that *all* specified action be taken by a date-certain deadline." *Id.* at 791 (internal quotation marks omitted). Under *Sierra Club*, it is "highly improbable that a deadline will ever be non-discretionary, i.e. clear-cut, if it exists only by reason of an inference drawn from the overall statutory framework." *Id.*

Shortly after *Sierra Club* was decided, the Second Circuit adopted the distinction "between those revision provisions in the [Clean Air] Act that include stated deadlines and those that do not, holding that revision provisions that do include stated deadlines should, as a rule, be construed as creating non-discretionary duties." *Envtl. Def. Fund v. Thomas*, 870 F.2d 892, 897 (2d Cir. 1989). Plaintiffs argue that the dispositive issue in *Environmental Defense Fund* was the discretion that the CAA provided to the EPA, because the provision at issue included the words, "as may be appropriate," and that the lack of a specific deadline was unnecessary to the holding. However, this argument ignores the Second Circuit's decision in *Natural Resources Defense Council, Inc. v. Thomas*, which held that the *Environmental Defense Fund* ruling was "premised . . . upon the observation that the District of Columbia Circuit has distinguished between those revision provisions in the Act that include stated deadlines and those that do not . . . ." *Nat. Res. Def. Council, Inc. v. Thomas*, 885 F.2d 1067, 1075 (2d Cir. 1989) (internal quotation marks omitted). Moreover, although the Second Circuit has not held that the date-certain rule applies to the CWA, other courts in this district have held that the rule should apply to the CWA. *See, e.g.*, *Nat. Res. Def. Council, Inc. v. Fox*, 30 F. Supp. 2d 369, 377 (S.D.N.Y. 1998) (relying on *Sierra*

11

*Club*, and finding that, because the CWA did not provide any particular date by which the EPA had to intervene, the EPA had "at least some discretion" to take action); *Cronin v. Browner*, 898 F. Supp. 1052, 1059 (S.D.N.Y. 1995) ("A non-discretionary or mandatory duty arises only where an agency bears a duty to act by a date certain.") (citing *Sierra Club*, 828 F.2d 783); *see also, e.g.*, *Altman v. United States*, No. 98-CV-237E(F), 2004 WL 3019171, at *3 (W.D.N.Y. Dec. 30, 2004) ("The statute does not compel the EPA either to hold a hearing or to make such a determination by any specific time, indicating that the withdrawal provision is discretionary.") (citing *Thomas*, 885 F.2d at 1075). Moreover, the Second Circuit has also noted that "[t]he citizen suit provision of the Clean Water Act was explicitly modeled on the similarly worded section 304 of the Clean Air Act." *Friends of the Earth v. Consol. Rail Corp.*, 768 F.2d 57, 63 (2d Cir. 1985).

Many of the actions that § 1313 of the CWA requires of both states and the EPA have specific deadlines. *See* 33 U.S.C. § 1313(c)(1)–(3) (requiring states to review the water standards every three years; requiring the EPA to approve proposed revisions within sixty days or disapprove them within ninety days; requiring states to adopt the EPA's changes within ninety days; requiring the EPA to promulgate any revised standards prepared and published pursuant to Subparagraph (4) within ninety days of publishing them). The CWA does not, however, require the EPA to "prepare and publish proposed regulations" within any specific time period after notifying a state that revised standards are not consistent with the applicable requirements of the CWA. *See id.* at § 1313(c)(3)–(4). Rather, the CWA requires only that such regulations be prepared and published "promptly."[11]

---

[11] I note that, while the longest stated deadline in § 1313 is ninety days, more than two and a half years have passed since NYSDEC received the 2016 Letter.

12

With no specific, statutory deadline I must conclude under the current case law in this Circuit that the Subparagraph (4) duty to prepare and publish proposed regulations is discretionary under the date-certain rule, and therefore I do not have jurisdiction under § 1365 to direct the EPA to perform any act or duty.

I note, however, that courts in other districts have held that the duty imposed under Subparagraph (4) is non-discretionary.[12] For example, a court in the Eastern District of Pennsylvania has explained how the language and design of the CWA support the conclusion that the duty imposed under Subparagraph (4) is non-discretionary:

> First, among the purposes of the [CWA] are to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters" and to attain "water quality which provides for the protection and propagation of fish, shellfish, and wildlife." 33 U.S.C. § 1251(a)(1), (2). These congressional goals simply cannot be satisfied when neither the EPA nor the state has promulgated a water quality standard that complies with federal law. This is so because discharges that would be unacceptable under federal law are presently being allowed under the less stringent Pennsylvania rules.
>
> Second, § 1313(c)'s procedure for approval of a state water quality standard is persuasive evidence that Congress provided for the situation in which the [EPA] had rejected the state's water quality standard and the state was then unwilling or unable to promulgate standards that complied with the [CWA]. In this situation, Congress has stated that the [EPA]—and nobody else—must promptly prepare and promulgate an acceptable water quality standard. Congress could have solved this problem by permitting the [EPA], in her discretion, to either prepare the regulations or permit a state reg-neg process to do so. But Congress placed the burden on the [EPA] to achieve the goals of the [CWA].

*Raymond Proffitt Foundation v. EPA*, 930 F. Supp. 1088, 1097 (E.D. Pa. 1996). The *Raymond Proffitt* court explained why the date-certain rule, which was established in the context of interpreting the Clean Air Act, should not be applied in the context of the CWA. *See id.* at

---

[12] *See, e.g.*, *CORALations v. EPA*, 477 F. Supp. 2d 413, 418 (D.P.R. 2007); *Nw. Envtl. Advocates v. EPA*, 268 F. Supp. 2d 1255, 1260–61 (D. Or. 2003); *cf. Idaho Conservation League, Inc. v. Russell*, 946 F.2d 717, 720 (9th Cir. 1991) (finding that a plaintiff's suit seeking to force the EPA to promulgate water quality regulations was not frivolous because Subparagraph (4) includes "mandatory language").

13

1098–1101. However, *Raymond Proffitt* and the other district courts to have found that the duty imposed by Subparagraph (4) is non-discretionary are not binding on me. Moreover, I find unpersuasive the analysis in *Raymond Proffitt*. The Third Circuit—unlike the Second Circuit—had not adopted the date-certain rule, even in the context of the Clean Air Act. *Id.* at 1101. Here, the Second Circuit has not only adopted the date-certain rule in the context of the Clean Air Act, *see Nat'l Res. Def. Council*, 885 F.2d at 1075, but has also noted that "[t]he citizen suit provision of the Clean Water Act was explicitly modeled on the similarly worded section 304 of the Clean Air Act," *Friends of the Earth*, 768 F2.d at 63. These precedents are binding on me. *See Frontera Res. Azer. Corp. v. State Oil Co. of the Azer. Republic*, 582 F.3d 393, 399 (2d Cir. 2009) (noting that the Second Circuit's "decisions are binding until overruled by [the Second Circuit] sitting *en banc* or by the Supreme Court").

V. **Conclusion**

For the foregoing reasons, Defendants' cross-motions to dismiss the first cause of action for lack of subject matter jurisdiction are GRANTED, and all other motions and cross-motions are DENIED as moot.

The Clerk of Court is respectfully directed to enter judgment for Defendants and close the case.

SO ORDERED.

Dated: March 15, 2019
      New York, New York

Vernon S. Broderick
United States District Judge